[Civ. No. 1948. Third Appellate District.—February 18, 1919.]

ALICE K. MURPHY, Respondent, v. WM. H. RIECKS, as Sheriff, etc., Defendant; LULU MIGNON MURPHY, Appellant.

[1] JUDGMENT FOR MAINTENANCE—LIEN ON REAL PROPERTY.—A judgment in an action for maintenance and support limited to exist in its operative effect to a specified time becomes *functus officio* at the expiration of that time, and ceases to be a lien upon the real property of the defendant.

[2] ID.—INJUNCTION—RESTRAINING SALE OF REAL PROPERTY BY EXECUTION.—Where a wife is the owner of the legal title to real property by deed of gift from her husband, and is in possession thereof and her title has been established as perfectly valid by a solemn judgment, in an action wherein its validity was directly challenged, an injunction will lie at her instance to restrain a sale of the property under an execution issued on a judgment against the husband in favor of the daughter of the husband and wife for the support and maintenance of the daughter.

APPEAL from a judgment of the Superior Court of San Joaquin County. W. H. Langdon, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Lulu Mignon Murphy, *in pro. per.*, and Walter F. Lynch for Appellant.

John R. Cronin for Respondent.

HART, J.—The appeal is by defendant, Lulu Mignon Murphy, from a judgment, entered in the superior court of the county of San Joaquin, restraining defendants from selling, by virtue of a certain writ of execution, at sheriff's sale or otherwise, certain real property of plaintiff.

The defendant, Riecks, as sheriff, filed an answer and disclaimer and upon the trial was permitted to withdraw from the case. The real parties to the action, therefore, are the plaintiff and Lulu Mignon Murphy, who will hereinafter be referred to as the defendant and appellant.

Prior to the thirteenth day of October, 1908, S. S. Murphy was the owner of the property sought to be sold by virtue of said writ of execution. On said day, by deed of gift, he conveyed said property to his wife, Alice K. Murphy, plaintiff herein, which deed was duly recorded on August 5, 1911, since which time the property has stood in the name of plaintiff.

Appellant is the daughter of said S..S. Murphy by a former wife. On the thirteenth day of March, 1911, she instituted an action (No. 9896) against her father. It was alleged in the complaint that plaintiff was a poor person, afflicted with disease and unable to work to support herself; that she had frequently demanded of her father that he maintain and support her and that he was financially able to contribute to her support. The demand was for $30 per month, commencing July 15, 1896, and for attorney's fees and costs. The defendant in said action filed an answer and, on the twenty-sixth day of April, 1911, a partial hearing was had, and the defendant, upon agreement and stipulation of the parties, was awarded an allowance of $18 per month, payment of which was to begin on the 29th of said month of April and to continue and to be made on the twenty-sixth day of each and every month thereafter, until the second day of January, 1912. Thereupon, and upon the agreement between counsel for the respective parties and the announcement in open court that "the interests of the parties might best be served by continuing the further hearing of said matter until Tuesday, the second day of January, 1912," the matter was continued by the court for further hearing to said date. On March 21, 1912, another hearing was had and judgment was entered in favor of plaintiff in said action (defendant herein), directing defendant in said action to pay her the

sum of $15 per month from January 5, 1912. In this connection, it should be stated that the trial court in this action, in its findings, refers to and treats its judgment of January 5, 1912, as a modification of the order or judgment of April 26, 1911. In other words, the phraseology of the recitals in the judgment or order of April 26, 1911, awarding the defendant here a monthly allowance of $18 for a specified limited period, seems to indicate that the matter was not on that date fully heard, and that the allowance awarded defendant in this action was intended as more in the nature of a *pendente lite* provision than as a final judgment, but the theory of the findings herein is that the original award was in the form of a judgment and that the later or final judgment was a modification of the former.

However, on the twenty-third day of June, 1913, defendant and appellant brought an action (No. 10,814) against her father and stepmother. In the third amended complaint therein, filed September 11, 1915, the judgment in said action No. 9896 was set out, and it was alleged: That the same is still in full force and effect; that S. S. Murphy has disposed of all the property which was recorded in his name at the time of the filing of the complaint and the rendering of the judgment in said action, and that there is now no property standing in his name on the records of the county of San Joaquin; that for more than two years said S. S. Murphy "has lived in defiance of said plaintiff's afore described judgment against him and has paid said plaintiff no money at all . . . and refuses to comply with the said judgment." It was alleged that "plaintiff believes, alleges, and affirms" that said transfer by said S. S. Murphy to Alice K. Murphy of the aforesaid real estate was made "for the purpose of placing all properties in the name of his said wife and thereby to endeavor to evade the payment of the afore described judgment of court and to defraud said plaintiff out of the income awarded her for her maintenance and support"; that said transfer by S. S. Murphy to his wife "was not made and recorded in good faith or for any legal purpose whatsoever, but . . . for the purpose of defrauding said plaintiff out of the afore described judgment of court and out of the income awarded said plaintiff." The complaint prayed that said deed of gift be declared fraudulent as against plaintiff and that the same be stricken from the records of said county.

Issue was joined by answer and the court found: That the deed of gift was not made to defraud plaintiff but was made in good faith; that said deed was delivered to Alice K. Murphy on the 13th of October, 1908, since which date said property "has been the exclusive property of said Alice K. Murphy." Judgment was accordingly entered in favor of defendants in said action. No appeal was taken from said judgment.

S. S. Murphy complied with the terms of the judgment in action No. 9896 until May 5, 1914, when he ceased making payments. On December 5, 1916, execution was issued to recover the sum of $465, then due, and the sheriff levied upon the property conveyed by said deed of gift. Alice K. Murphy served upon the sheriff a "third party claim" in which she notified him that she was the owner of the property levied upon and demanded its release.

On the 12th of January, 1917, the present action (No. 12,336) was commenced by Alice K. Murphy against the sheriff and Lulu Mignon Murphy. The complaint alleged: "That S. S. Murphy has no right, title, interest, or claim in said real property," describing it; that the writ of execution referred to required the sheriff to make good "certain sums therein specified out of the personal or real property of S. S. Murphy"; that by virtue of said writ of execution the sheriff has levied upon real property of the plaintiff and is about to sell the same; that, on the third day of January, 1917, the plaintiff served on the defendant, sheriff, "her verified claim to said real property . . . and a demand that said real property be surrendered to said plaintiff," which demand was by the sheriff refused. It was then alleged that said writ of execution was issued in said case No. 9896 and reference is made to the judgment therein obtained. The execution, delivery, and recordation of said deed of gift are alleged. Reference is made to action No. 10,814 and the judgment therein rendered decreeing that the property in question is the separate property of plaintiff. "That the defendant, Lulu Mignon Murphy, holds no judgment against this plaintiff," and that she is well aware that the property stands in the name of plaintiff and that S. S. Murphy has no right, title, interest, or claim therein. The prayer was for an order restraining the sheriff from selling said property.

The answer of defendant denied plaintiff's ownership of the property; alleged that, on April 10, 1911, and on April 14, 1911, S. S. Murphy, in his answer in action No. 9896, admitted ownership of said property; alleged that S. S. Murphy has interest in said property "to the extent of the aforesaid judgment"; that the deed of gift is void as against the judgment secured against S. S. Murphy. "Affirms that said plaintiff by neglecting and failing to record said described and alleged deed of gift, prior to said commencement of said action No. 9896, has waived all right to priority over the judgment in said case," and has waived all right to interfere with the execution; that the judgment in action No. 9896 became a lien on the property prior to the recording of the deed of gift.

On January 15, 1917, a temporary restraining order was issued and served upon the sheriff. The action was tried on April 10, 1917, findings were filed in favor of plaintiff and judgment was entered on May 21, 1917, enjoining defendants from selling plaintiff's property.

[1] We think that the theory of the findings in this action that the judgment of March 21, 1912, involved a modification of the said judgment or order of the twenty-sixth day of April, 1911, awarding the plaintiff in said proceeding (defendant herein) the sum of $18 per month until the second day of January, 1912, is not sustainable. The two judgments are entirely distinct from each other. The first was limited to exist, in its operative effect, to a certain specified time, and when the time to which it was so limited lapsed, which was prior to the rendition and the entry of the second judgment, it became *functus officio,* and assuming that by virtue thereof a lien attached to the premises conveyed by S. S. Murphy, in October, 1908, to the plaintiff herein, the grant not having been recorded until after said judgment was entered, then said lien passed out contemporaneously with the passing out of said judgment, it appearing that the same was fully satisfied by said S. S. Murphy. It follows that, since the conveyance from S. S. Murphy to the plaintiff herein was of record at the time of the rendition and entry of the second judgment, no lien by reason of said second judgment could attach to the said premises.

As to the charge in the answer herein that the conveyance from S. S. Murphy to the plaintiff herein was fraudulent and

made for the purpose of preventing the satisfaction of the judgment herein out of the property so conveyed, the ready reply thereto is to be found in the finding and in the evidence that, in an action instituted by the defendant here in September, 1915, and subsequent to the entry of the second judgment awarding her a monthly allowance for support against her father, S. S. Murphy, the issue as to the alleged fraudulent transfer of the premises involved herein by S. S. Murphy to the plaintiff herein was made by the pleadings, and upon the trial thereof the court found and decided that the charge of fraud in said transaction was without foundation. As seen, no appeal was taken from the judgment in said action, and the finding or decision in said action that said conveyance was not fraudulent or made with intent to defraud the defendant of the fruits of her judgment against her father for maintenance and support is conclusive upon that issue as against her.

The claim is made that injunction is not the proper remedy in such a case as this. The contention possesses no force. It is thoroughly settled that a sale of lands upon an execution issued against the grantor of the person holding the legal title will cast a cloud upon the title (*Einstein* v. *Bank of California,* 137 Cal. 47, 49, [69 Pac. 616] ; High on Injunctions, 3d ed., sec. 379; 3 Freeman on Executions, 3d ed., sec. 438; *Pixley* v. *Huggins,* 15 Cal. 133), and it is equally well settled that a sale will be enjoined where its effect will be to cloud the title of the party complaining. (High on Injunctions, sec. 372; *Shattuck* v. *Carson,* 2 Cal. 588; *Pixley* v. *Huggins.* 15 Cal. 128; *Culver* v. *Rogers,* 28 Cal. 520; *Porter* v. *Pico,* 55 Cal. 175; *Porter* v. *Jennings,* 89 Cal. 440, [26 Pac. 965] ; *Einstein* v. *Bank of California,* 137 Cal. 47, 49, [69 Pac. 616].)

[2] The plaintiff was the owner of the legal title to the property involved herein and in possession thereof. Her title to the property was not only presumptively good but established to be perfectly valid by a solemn judgment of a court of competent jurisdiction in an action wherein the validity of her title was directly challenged. The sale of the property by the sheriff under the execution issued against the property for the satisfaction of a judgment against her husband, although insufficient to vest title in the purchaser at the execution sale, would, nevertheless, be sufficient to enshroud the validity of her title in a veil of doubt and thus cast a cloud

upon it.  We can imagine no case where the injunctive or preventive function of courts of equity could the more justly or appropriately be called into action than in a case where, as here, there was about to be consummated a proceeding, bearing upon its face the insignia of judicial authority, which would, if carried out, involve the validity of a person's title to land in doubt.  Certainly it would be a very weak system of remedial justice that would require the owner of the land to stand helpless and mute until after the threatened mischief to his title had been committed, and we know of no other remedy afforded either by the law or by the equity courts than that of the writ of injunction which would prevent the commission of so grievous a mischief upon and against the title to real property.

It is perfectly clear that there is no other possible alternative open to this court but to affirm the judgment, although we are frank to say that, so far as we are informed by the record before us of the facts of the controversy giving rise to this litigation, the appellant is entitled to receive assistance from her parents, if they are financially able to render such assistance, in the matter of her maintenance and support. Indeed, such assistance should be provided, not as the result of the coercive power of the law, as it has been written by man, but in ready response to the dictates of the very first and commonest principles of humanity.  It is, of course, the legal duty of S. S. Murphy to support the appellant, if for any substantial reason she is unable to support herself and he has ample means for doing so, but, above all, is that natural duty intrinsically reciprocal as between parent and child, involving obligations which should be held none the less sacred and morally binding because in some measure formally recognized by positive law.  It is to be deprecated that some substantial relief cannot be afforded the appellant through the processes of the courts, if it be true that under the circumstances of her case no such relief be available to her, assuming, of course, that she is for any reason without ability to maintain herself and that her father is.  But the law, both substantive and remedial, must be applied according to a well-defined plan to secure that uniformity of operation so necessary to a well-poised system of jurisprudence, and the courts can do no more or no less than to administer the first

in the manner prescribed by the latter.  Thus we speak, not alone because we see justness in the claim of the appellant that she is entitled to assistance from her parents, but also because, although not a licensed practitioner of the law and undoubtedly without training therein, it appears that she has been required, probably from paucity of means to employ the services of an attorney, to appear in this cause before this court *in propria persona* and so present her own side of this controversy.  She has filed herein a voluminous brief, prepared, as we are informed, by herself, unaided by a lawyer, and while therein, for one who has not been an habitual student of the law, she has presented her·side of this case with singular clearness and force, it is plainly manifest that (as above declared), so far as this particular case is concerned, the law is against her, and, therefore, her appeal cannot be sustained.

The judgment is accordingly affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 17, 1919.

All the Justices concurred.